# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY BARBOSA,<br><br>    Plaintiff,<br><br>v.<br><br>NKIRUKA NDU, et al.,<br><br>    Defendants. | Case No. 1:21-cv-00251-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 26) |

Jeffrey Barbosa (Plaintiff), a state prisoner, is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed August 31, 2022.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants Nkiruka Ndu and Chika Mbadugha for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

Defendants filed an answer to the complaint on June 14, 2021. (ECF No. 15.)

On July 8, 2021, the Court issued the discovery and scheduling order. (ECF No. 20.)

On August 31, 2022, Defendants filed the instant motion for summary judgment. (ECF No. 26.) Plaintiff filed an opposition on September 30, 2022, and Defendants filed a reply on

1

October 6, 2022.  (ECF Nos. 27, 28.)

## II.

## LEGAL STANDARD

A. **Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that

this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.     Summary of Plaintiff's Complaint

Plaintiff began to complaint about his left eye being blurry on November 28, 2018. Plaintiff suffers from cataract in his left eye.  Both doctor Ndu and physician assistant Mbadugha were aware of Plaintiff's cataract, but ignored his complaints of pain and loss of vision.  Doctor Ndu was Plaintiff's primary care physician for approximately 16 months, and doctor Mbadugha was Plaintiff's physician assistant for approximately 10 months.  Both Defendants denied and/or delayed medical treatment for Plaintiff's cataract which resulted in pain and loss of vision.

### B.     Statement of Undisputed Facts[1]

1. Plaintiff is an inmate housed at California Substance Abuse Treatment Facility (SATF) during all times relevant to this litigation.  (ECF No. 1.)

2. Plaintiff filed his complaint on February 23, 2021, alleging Defendants Dr. Ndu and P.A. Mbadugha caused delays in his receipt of cataract removal surgery that caused blindness in the left eye.  Plaintiff alleges these delays were the result of Defendants' deliberate indifference in violation of the Eighth Amendment.  (ECF No. 1 at 3.)

3. On February 27, 2015, Plaintiff was evaluated by an ophthalmologist and noted to have an unaided visual acuity of 20/40 in the left eye.  (Declaration of B. Feinberg (Feinberg Decl.) ¶ 9 & Ex. B at 1-2.)

4. Plaintiff's first recorded complaint of left eye issues was in an August 20, 2019 CDCR form 7362 where he alleged "My eye got scratched while playing Basketball and my vision is blurry in my left eye.  I would like to see optometrist."  Based upon Plaintiff's request, on August 21, 2019, Defendant NDU—then named Dr. Akabike—ordered Plaintiff to be evaluated by an optometrist.  Plaintiff's August 20, 2019 form 7362 was the first time Dr. Ndu

---

[1] Hereinafter referred to "UF."

3

was informed of Plaintiff's eye complaints.  (Feinberg Decl. ¶ 10 & Ex. B at 4-5; Declaration of N. Ndu (Ndu Decl.) ¶ 8.)

5.  Plaintiff was evaluated by an optometrist on November 5, 2019.  The optometrist recorded Plaintiff's complaint as "states scratch finger nail OS [left eye]" and measured Plaintiff's left eye visual acuity at 20/400, correctable to 20/60.  The optometrist observed a cataract in Plaintiff's left eye and recommended referral to an ophthalmologist for cataract surgery. (Feinberg Decl. ¶ 11 & Ex. B at 7; Ndu Decl. ¶ 9.)

6.  Dr. Ndu first evaluated Plaintiff's eye complaints on November 19, 2019.  Dr. Ndu noted Plaintiff was recently evaluated by optometry for blurry vision and a cataract.  Dr. Ndu submitted a request for services for ophthalmology evaluation for cataract surgery on November 19, 2019. (Feinberg Decl. ¶ 12 & Ex. B at 8; Ndu Decl. ¶ 10.)

7.  Based upon the approval of Dr. Ndu's November 19, 2019 RFS, on February 10, 2020 SATF scheduling staff requested an ophthalmology evaluation with Dr. Paul Bonds.  On February 11, 2020, Dr. Bond's office confirmed and scheduled an appointment for February 18, 2020.  (Declaration of M. Bella-Gonzalez (Bella-Gonzalez Decl.) ¶ 10.)

8.  Based on Dr. Ndu's referral, Plaintiff was scheduled for and attended a February 18, 20202 evaluation with Dr. Paul Bonds at Golden State Eye Medical Group, an outside private medical provider.  Dr. Bonds diagnosed Plaintiff's left eye cataract and recommended referral to Dr. Khaled Tawansy for cataract surgery consult.  (Feinberg Decl. ¶ 13 & Ex. B at 9-11; Ndu Decl. ¶ 11.)

9.  On March 3, 2020, Defendant Physician's Assistant (P.A.) Mbadugha evaluated Plaintiff, reviewed Dr. Bond's February 18, 2020 report, and submitted a request for referral to Dr. Tawansy.  The referral was denied and more information requested on March 23, 2020.  Nurse Practitioner Anthony Hales re-evaluated Plaintiff and submitted a second request for services with additional information on March 23, 2020, which was approved.  (Feinberg Decl. ¶ 10 & Ex. B at 8; Ndu Decl. ¶ 10; Declaration of C. Mbadugha (Mbadugha Decl.) ¶ 8.)

10.  P.A. Mbadugha was first informed of Plaintiff's left eye complaints on March 3, 2020.  (Mbadugha Decl. ¶ 9.)

1       11.     Dr. Ndu was not involved in the request for services for cataract surgery that were
2  submitted on March 3, 2020 and March 23, 2020.  (Ndu Decl. ¶ 12.)
3       12.     Surgery could not be scheduled with Dr. Tawansy because Dr. Tawansy was
4  removed from the authorized provider list on May 29, 2018.  Staff were instructed that for any
5  services with Dr. Tawansy, staff should "cancel or redirect patients" to appropriate treatment
6  providers.  (Bella-Gonzalez Decl. ¶ 12 & Ex. C.)
7       13.     On March 26, 2020, SATF scheduling staff requested a date for cataract removal
8  surgery with Dr. Bonds.  On April 15, 2020, Dr. Bond's office confirmed and scheduled a June
9  9, 2020 appointment for surgery.  (Bella-Gonzalez Decl. ¶ 12 & Ex. A at 3.)
10      14.     On June 3, 20202, the June 9, 2020 appointment with Dr. Bonds was rescheduled
11 to July 21, 2020 due to COVID-19 precautions.   (Bella-Gonzalez Decl. ¶ 13 & Ex. A at 3-4.)
12      15.     The compliance date for the March 23, 2020 request for service from N.P. Hales
13 expired on June 21, 2020.  A compliance date is the date by which the provider requests the
14 treatment be completed.  Physicians are not required to submit a new RFS until one year after the
15 original approval date.  Physicians can submit a new RFS within one year if they believe it is
16 necessary to expedite care, but are not required to do so.  (Bella-Gonzalez Decl. ¶ 14 & Ex. A at
17 2-4.)
18      16.     On July 14, 2020, the July 21, 2020 appointment with Dr. Bonds was rescheduled
19 to August 18, 2020 due to COVID-19 precautions.  This was rescheduled based upon Dr. Ndu's
20 March 23, 2020 request for service.   (Bella-Gonzalez Decl. ¶ 15 & Ex. A at 3-4.)
21      17.     On July 15, 2020, Dr. Ndu completed a telehealth evaluation of Plaintiff, noting
22 the request for cataract surgery was approved and surgery was scheduled for August 2020.
23 (Feinberg Decl. ¶ 15 & Ex. B at 28-29; Ndu Decl. ¶ 13.)
24      18.     The August 18, 2020 appointment with Dr. Bonds was cancelled due to COVID-
25 10 precautions.  Dr. Ndu submitted a new request for services on August 26, 2020, noting
26 "surgery was not done due to COVID-19, pls rescheduled (sic) appt."  Dr. Ndu submitted
27 additional requests for authorization on August 27, 2020 and August 28, 2020 noting that
28 Plaintiff "was seen by Dr. Bonds who recommended but he does not perform surgeries.  Needs to

5

establish care with another provider who performs surgeries." Dr. Ndu's August 28, 2020 request was approved. (Feinberg Decl. ¶ 16 & Ex. B at 14, 16; Ndu Decl. ¶ 14; Bella-Gonzalez Decl. ¶¶ 16-18 & Ex. A at 5.)

19.     On August 31, 2020, the scheduling department at SATF requested an appointment with ophthalmologist Dr. Yaplee. On October 1, 2020, Dr. Yaplee's office confirmed and scheduled a November 19, 20202 appointment. (Bella-Gonzalez Decl. ¶ 18 & Ex. A at 6.)

20.     On November 12, 2020, the November 19, 20202 appointment with Dr. Yaplee was rescheduled to January 21, 2021 due to COVID-19 precautions. (Bella-Gonzalez Decl. ¶ 19 & Ex. A at 6.)

21.     CDCR staff scheduled the January 21, 2021 based upon Dr. Ndu's request. (Bella-Gonzalez Decl. ¶ 25 & Ex. A at 6.)

22.     On November 30, 2020, Dr. Ndu again evaluated Plaintiff, noting "surgery was not performed because of COVID-19 precautions. He is scheduled to see Ophthalmology 1/2021. (Feinberg Decl. ¶ 17 & Ex. B at 26; Ndu Decl. ¶ 15.)

23.     Plaintiff was in COVID-19 surveillance and quarantine from November 30, 2020 through December 16, 2020. (Feinberg Decl. ¶ 18 & Ex. B at 25-26; Ndu Decl. ¶ 16.)

24.     On January 8, 2021, Dr. Ndu completed a re-evaluation of Plaintiff, noting he "needs to undergo cataract surgery. Will ask U[tilization] M[anagement] to schedule surgery. (Feinberg Decl. ¶ 19 & Ex. B at 24-24; Ndu Decl. ¶ 16.)

25.     Plaintiff was evaluated by ophthalmologist Dr. Steven Yaplee on January 21, 2021. Dr. Yaplee recommended Plaintiff for left eye phacoemulsification with intraocular lens implantation. (Feinberg Decl. ¶ 20 & Ex. B at 33, 38; Ndu Decl. ¶ 18; Bella-Gonzalez Decl. ¶¶ 19-20.)

26.     Dr. Ndu evaluated Plaintiff on February 2, 2021. Based upon Dr. Yaplee's recommendation, Dr. Ndu again requested and received approval for Plaintiff to undergo cataract surgery in the left eye. Based upon Dr. Ndu's request for authorization, surgery was completed by Dr. Yaplee on March 30, 2021. (Feinberg Decl. ¶ 21 & Ex. B at 21, 23, 40; Ndu Decl. ¶¶ 19-

1 | 20; Bella-Gonzalez Decl. ¶¶ 20-21.)

2 | 27. Plaintiff underwent follow-up with an optometrist on October 15, 2021.
3 | Plaintiff's left eye visual acuity was measured at 20/40. (Feinberg Decl. ¶ 23 & Ex. B at 45-46;
4 | Ndu Decl. ¶ 21.)

### C. Analysis of Defendants' Motion

Defendants argue there is no evidence to show that they failed to respond to Plaintiff's medical need or intentionally caused a delay in receipt of surgery, any delay was caused by the COVID-19 pandemic, and Plaintiff suffered no harm. In the alternative, Defendants argue they are entitled to qualified immunity.

To succeed on a medical care claim, a plaintiff must establish he had a serious medical need and that the defendant's response to that need was deliberately indifferent. Estelle V. Gamble, 429 U.S. 97, 106 (1976). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the "... unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

Generally, a defendant acts with deliberate indifference if he was (1) subjectively aware of the serious medical need and (2) failed to adequately respond. Farmer v. Brennan, 511 U.S. 825, 828 (1994). The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in

providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. When delay is alleged, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). But deliberately ignoring a prisoner's prior physician orders for reasons unrelated to the medical needs of a prisoner may show deliberate indifference. Hamilton v. Endell, 981 F.2d 1062, 1066-67 (9th Cir. 1992) (overruled on other grounds).

Here, it is undisputed that on February 27, 2015, Plaintiff was evaluated by an ophthalmologist and noted to have an unaided visual acuity of 20/40 in the left eye. (UF 3.) Plaintiff's first recorded complaint of left eye issues was in an August 20, 2019 CDCR form 7362 where he alleged "My eye got scratched while playing Basketball and my vision is blurry in my left eye. I would like to see optometrist." Based upon Plaintiff's request, on August 21, 2019, Defendant NDU—then named Dr. Akabike—ordered Plaintiff to be evaluated by an optometrist. Plaintiff's August 20, 2019 form 7362 was the first time Dr. Ndu was informed of Plaintiff's eye complaints. (UF 4.)

Plaintiff was evaluated by an optometrist on November 5, 2019. The optometrist recorded Plaintiff's complaint as "states scratch finger nail OS [left eye]" and measured Plaintiff's left eye visual acuity at 20/400, correctable to 20/60. The optometrist observed a cataract in Plaintiff's left eye and recommended referral to an ophthalmologist for cataract surgery. (UF 5.)

Dr. Ndu first evaluated Plaintiff's eye complaints on November 19, 2019. Dr. Ndu noted Plaintiff was recently evaluated by optometry for blurry vision and a cataract. Dr. Ndu submitted a request for services for ophthalmology evaluation for cataract surgery on November

19, 2019. (UF 6.) Based upon the approval of Dr. Ndu's November 19, 2019 RFS, on February 10, 2020 SATF scheduling staff requested an ophthalmology evaluation with Dr. Paul Bonds. On February 11, 2020, Dr. Bond's office confirmed and scheduled an appointment for February 18, 2020. (UF 7.) Based on Dr. Ndu's referral, Plaintiff was scheduled for and attended a February 18, 20202 evaluation with Dr. Paul Bonds at Golden State Eye Medical Group, an outside private medical provider. Dr. Bonds diagnosed Plaintiff's left eye cataract and recommended referral to Dr. Khaled Tawansy for cataract surgery consult. (UF 8.)

On March 3, 2020, Defendant Physician's Assistant (P.A.) Mbadugha evaluated Plaintiff, reviewed Dr. Bond's February 18, 2020 report, and submitted a request for referral to Dr. Tawansy. The referral was denied and more information requested on March 23, 2020.[2] Nurse Practitioner Anthony Hales re-evaluated Plaintiff and submitted a second request for services with additional information on March 23, 2020, which was approved. (UF 9.) P.A. Mbadugha was first informed of Plaintiff's left eye complaints on March 3, 2020. (UF 10.)

Dr. Ndu was not involved in the request for services for cataract surgery that were submitted on March 3, 2020 and March 23, 2020. (UF 11.)

Surgery could not be scheduled with Dr. Tawansy because Dr. Tawansy was removed from the authorized provider list on May 29, 2018. Staff were instructed that for any services with Dr. Tawansy, staff should "cancel or redirect patients" to appropriate treatment providers. (UF 12.)

On March 26, 2020, SATF scheduling staff requested a date for cataract removal surgery with Dr. Bonds. On April 15, 2020, Dr. Bond's office confirmed and scheduled a June 9, 2020 appointment for surgery. (UF 13.)

On June 3, 20202, the June 9, 2020 appointment with Dr. Bonds was rescheduled to July

---

[2] Utilization management denials of requests based upon the need for more information allow for resubmission of a request for services. Denials based upon the need for more information are common part of medical practice. (Mbadugha Decl. ¶ 11; Bella-Gonzalez Decl. ¶¶ 22-23.) Neither Dr. Ndu nor P.A. Mbadugha are involved in scheduling appointments for any of their patients once a request for services is submitted and approved. Neither Dr. Ndu nor P.A. Mbadugha were involved in the scheduling of Plaintiff's treatment for his cataract except for the submission of requests for services. (Ndu Decl. ¶ 25; Mbadugha Decl. ¶ 15; Bella-Gonzalez Decl. ¶ 3.)

1  21, 2020 due to COVID-19 precautions.  (UF 14.)

2  The compliance date for the March 23, 2020 request for service from N.P. Hales expired
3  on June 21, 2020.  A compliance date is the date by which the provider requests the treatment be
4  completed.  Physicians are not required to submit a new RFS until one year after the original
5  approval date.  Physicians can submit a new RFS within one year if they believe it is necessary
6  to expedite care, but are not required to do so. (UF 15.)

7  On July 14, 2020, the July 21, 2020 appointment with Dr. Bonds was rescheduled to
8  August 18, 2020 due to COVID-19 precautions.  This was rescheduled based upon Dr. Ndu's
9  March 23, 2020 request for service.  (UF 16.)

10 On July 15, 2020, Dr. Ndu completed a telehealth evaluation of Plaintiff, noting the
11 request for cataract surgery was approved and surgery was scheduled for August 2020.  (UF 17.)

12 The August 18, 2020 appointment with Dr. Bonds was cancelled due to COVID-19
13 precautions.  Dr. Ndu submitted a new request for services on August 26, 2020, noting "surgery
14 was not done due to COVID-19, pls rescheduled (sic) appt."  Dr. Ndu submitted additional
15 requests for authorization on August 27, 2020 and August 28, 2020 noting that Plaintiff "was
16 seen by Dr. Bonds who recommended but he does not perform surgeries.  Needs to establish care
17 with another provider who performs surgeries."  Dr. Ndu's August 28, 2020 request was
18 approved. (UF 18.)

19 On August 31, 2020, the scheduling department at SATF requested an appointment with
20 ophthalmologist Dr. Yaplee.  On October 1, 2020, Dr. Yaplee's office confirmed and scheduled
21 a November 19, 20202 appointment. (UF 19.)

22 On November 12, 2020, the November 19, 20202 appointment with Dr. Yaplee was
23 rescheduled to January 21, 2021 due to COVID-19 precautions.  (UF 20.)  CDCR staff scheduled
24 the January 21, 2021 based upon Dr. Ndu's request.  (UF 21.)

25 On November 30, 2020, Dr. Ndu again evaluated Plaintiff, noting "surgery was not
26 performed because of COVID-19 precautions.  He is scheduled to see Ophthalmology 1/2021.
27 (UF 22.)  Plaintiff was in COVID-19 surveillance and quarantine from November 30, 2020
28 through December 16, 2020. (UF 23.)

10

1          On January 8, 2021, Dr. Ndu completed a re-evaluation of Plaintiff, noting he "needs to
2   undergo cataract surgery.  Will ask U[tilization] M[anagement] to schedule surgery.  (UF 24.)

3          Plaintiff was evaluated by ophthalmologist Dr. Steven Yaplee on January 21, 2021.  Dr.
4   Yaplee recommended Plaintiff for left eye phacoemulsification with intraocular lens
5   implantation.   (UF 25.)

6          Dr. Ndu evaluated Plaintiff on February 2, 2021.   Based upon Dr. Yaplee's
7   recommendation, Dr. Ndu again requested and received approval for Plaintiff to undergo cataract
8   surgery in the left eye.  Based upon Dr. Ndu's request for authorization, surgery was completed
9   by Dr. Yaplee on March 30, 2021.  (UF 26.)  Plaintiff underwent follow-up with an optometrist
10  on October 15, 2021.  Plaintiff's left eye visual acuity was measured at 20/40.  (UF 27.)

11         As stated above, Defendants have submitted evidence (and it is undisputed) that they both
12  sought authorizations for care for Plaintiff's eye condition shortly after receiving notice of his
13  complaints.  (UF 4-5, 6, 8-9.)  Furthermore, it is undisputed that any delay in the scheduling of
14  Plaintiff's surgery was due to the COVID-19 pandemic, and he was provided surgery on March
15  30, 2021.  (UF 13-16, 18-20, 25-26.)  Liability cannot be imposed against Defendants based on
16  caused solely by the COVID-19 pandemic.  See, e.g., Guzman v. Ward, No. 3:19-cv-00104-RCJ-
17  WGC, 2021 WL 3518980, at *24 (D. Nev. May 26, 2021) (holding delays in scheduling and
18  provision of cataract surgery due to COVID-19 pandemic does not demonstrate subjective prong
19  of deliberate indifference); see also Wolfe v. Idaho Dep't of Corrections, No. 1:13-CV-00227-
20  EJL, 2015 WL 4458862, at *8 (D. Idaho July 21, 2015) (defendants were not negligent or
21  deliberately indifferent when inmate-patient with cancer encountered frustrating months long
22  delays in scheduling treatment with outside medical care providers, resulting in the spread of his
23  cancer).  Plaintiff has not alleged facts from which the Court could plausibly infer that
24  any delays or inadequacies in his care are indicative of deliberate indifference as opposed to
25  negligence or (in the case of COVID-related delays) a reasonable administrative concern.

26         In his opposition, Plaintiff contends that the records submitted in support of Defendants'
27  motion for summary judgment "doesn't match the discovery evidence that was sent to [Plaintiff]
28  from California Health Care Services Division" and "the discovery evidence of my medical file

11

1  was with held [sic] and never provided upon my request on July 23, 2022."³ (ECF No. 27.)
2  However, Plaintiff presents no evidence whatsoever to support his assertion of some alleged
3  discrepancy in his medical records. That is, Plaintiff has failed to present any evidence to
4  identify how his medical records do not "match the discovery evidence that was sent to [him]
5  from the Health Care Services Division" or how such records would even be relevant to the
6  instant action. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir.
7  2001) (holding that "conclusory allegations unsupported by factual data are insufficient to defect
8  [a] summary judgment motion") (citation omitted). Furthermore, Plaintiff's claim of some
9  failure to respond to discovery is both irrelevant and misleading. Defendants submit evidence
10 that Plaintiff never served any discovery requests on them. (Declaration of Anthony Corso
11 (Corso Decl.) ¶ 3.) Rather, based on Plaintiff's contention his request for records occurred
12 before discovery opened in this case and more than seven months prior to the filing of complaint.
13 (See ECF Nos. 1, 27.) In sum, Plaintiff has not identified how any records are relevant to the
14 instant motion for summary judgment and there are no allegations that either Defendant was
15 involved in the production of records to him.⁴ Accordingly, Defendants' motion for summary
16 judgment should be granted.

## IV.

## ORDER AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 26) be granted; and
2. Judgment be entered in favor of Defendants.

///

---

³ To the extent Plaintiff is seeking to stay the case, Plaintiff has failed to present any evidence to support his claims and relies upon events that allegedly occurred before Plaintiff filed the complaint and actions by non-Defendant third party individuals. Accordingly, there is no basis to stay the case.

⁴ Because the Court finds Defendants' motion for summary judgment should be grant on the merits, it need not reach the issue of qualified immunity.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **October 13, 2022**

UNITED STATES MAGISTRATE JUDGE